# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CIVIL CASE NO. 1:11cv225

|  |  |
|---|---|
| HELEN CLIETTE HOUEYand<br>EMMANUEL HOUEY, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| vs. | ) <br> ) |
| CAROLINA FIRST BANK, TD BANK, | ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the following matters:

1. The Motion to Dismiss of TD Bank, N.A. (TD), successor by merger to and formerly known as Carolina First Bank [Doc. 7];

2. The Motion for Emergency Injunctive Relief [Doc. 27] of the *pro se* Plaintiffs;

3. The Motion for Leave to File Amended Complaint to Add Additional Party Plaintiff [Doc. 28] of the *pro se* Plaintiffs;

4. The Motion to Intervene [Doc. 30] of Michelle Smith (Smith);

5. The Motion for Extension of Time to Consult/Retain Counsel of Smith

[Doc. 31];

6.      The Motion to Strike Plaintiffs' Response & Opposition to Motion to Dismiss of TD [Doc. 32];

7.      The Notice of Bankruptcy Filing as to the Plaintiffs [Doc. 39];

8.      The Notice of Foreclosure Sale and Bankruptcy Filing of Plaintiff Helen Houey [Doc. 40]; and

9.      The Motion for Emergency Injunctive Relief of Plaintiff Helen Houey and non-party Smith [Doc. 46].

## PROCEDURAL HISTORY

In August 2011, Plaintiffs Helen Cliette Houey (Helen) and Emmanuel Houey, appearing *pro se*, filed a thirty-seven page Complaint in state court alleging eighteen causes of action against the Defendants. [Doc. 1-1]. The Houeys alleged $290,000.00 in damages stemming primarily from the Defendants' foreclosure of real property allegedly owned solely by Helen in Shelby, North Carolina. [Id.]. In the Complaint, it was alleged that the promissory note signed by the Plaintiffs in connection with the property had a cross-default provision referencing a commercial promissory note which is purportedly in default, thus precipitating the foreclosure. [Id.]. TD is the successor by merger to Carolina First Bank and it removed the action to this

Court on September 8, 2011 on the basis of diversity and federal question jurisdiction.[1] [Doc. 1].

In response to the removal, Smith, who asserts that she is Helen's daughter, filed a motion to remand the action to state court. [Doc. 1-1 at 56; Doc. 10]. Two days later, TD filed a motion to dismiss certain claims of the Complaint. [Doc. 7]. Smith then filed a motion to cancel the foreclosure sale. [Doc. 12]. Smith signed both of the motions on Helen's behalf. [Doc. 10; Doc. 12]. On November 7, 2011, Smith filed a response to TD's motion to dismiss certain claims and signed the pleading on behalf of her mother. [Doc. 19 at 18].

By Order entered November 8, 2011, this Court denied without prejudice the motions filed by Smith. [Doc. 18]. In the Order, the Court explained to Smith that she is not legally authorized to represent her mother because she is not an attorney. [Id.]. Smith was also advised that she is not a party to the action. [Id.]. The Order contained notice to the Houeys as *pro se* Plaintiffs of the burden on them to come forward with a response to TD's Motion to Dismiss and they were instructed to file response to that motion on or before November 23, 2011. [Id.]. Smith was cautioned that she was not allowed to

---

[1]The Court hereafter refers to the Defendants in the singular since TD has succeeded to all interest of Carolina First Bank.

file a response to the motion on behalf of her mother. [Id.].

Despite the Court's admonitions, Smith continued to file documents which she signed on behalf of her mother. [Doc. 22; Doc. 23; Doc. 24; Doc. 25]. These documents have been stricken from the record. [Doc. 26].

On December 1, 2011, the *pro se* Plaintiffs filed an untimely response to TD's Motion to Dismiss. [Doc. 29]. TD promptly moved to strike it as untimely. [Doc. 32]. The Plaintiffs also filed on December 1, 2011 a motion to stop the impending foreclosure sale. [Doc. 27]. On the same date, they moved for leave to amend their Complaint to add Smith as a party plaintiff. [Doc. 28]. In that motion, it was disclosed that after the Order Allowing Foreclosure was entered by the state court, Helen executed a quit claim deed purporting to convey her interest in the property to be foreclosed to Smith. [Id.].[2] A copy of the deed was attached to the motion. [Id.].

On December 2, 2011, Smith moved for leave to intervene in the action as a plaintiff and requested an extension of time within which to retain an attorney. [Doc. 30; Doc. 31].

In response to the pending motion to stop the final foreclosure sale, TD

_____

[2] Interestingly, the grantor of the deed is identified as Mary Helen Smith Cliette, rather than Helen Cliette Houey. Also, Plaintiff Emmanuel Houey did not join in the conveyance of his marital interest. [Doc. 28 at 4-5]. These discrepancies are nowhere explained in the record.

disclosed that the actual sale had not yet occurred. [Doc. 33]. Helen, however, failed to appeal the Order Allowing Foreclosure dated August 10, 2011. [Id.]. The sale was rescheduled several times. [Id.].

On March 5, 2012, in an apparent effort to prevent the foreclosure sale which had finally been scheduled, Helen filed for bankruptcy protection. [Doc. 40].[3] In response to an Order from this Court, TD has advised that the automatic stay provisions of 11 U.S.C. §362 do not apply to this action. [Doc. 43]. Helen asserts otherwise. [Doc. 47].

On April 25, 2012, Helen, along with Smith, moved once again to enjoin the foreclosure of the property at issue. [Doc. 46]. TD has disclosed that the property was sold at foreclosure on February 28, 2012 to TD as the highest bidder. [Doc. 48]. The Deed was recorded on April 9, 2012 in Book 1633 at Page 0573 in the Office of the Register of Deeds of Cleveland County, North Carolina. [Id. at 2].

## DISCUSSION

**The automatic stay provisions of 11 U.S.C. §362.**

The Court first considers whether this action must be stayed due to the

---

[3] This filing is quite ambiguous as to whether the Plaintiffs actually filed for bankruptcy and if they did whether both Plaintiffs did so. Plaintiff Emmanuel Houey did not join in the filing of Document 40. The Defendant, however, informed the Court of the bankruptcy filing by both Plaintiffs. [Doc. 39].

Houeys' bankruptcy. On March 5, 2012, the Houeys filed for Chapter 13 bankruptcy protection. [Doc. 39]. When a debtor files for bankruptcy protection, 11 U.S.C. §362 imposes an automatic stay of the commencement or continuation of an action against the debtor, the enforcement of a judgment against the debtor or property of his or her estate, any act to collect a debt of the debtor and/or any act to obtain property of the debtor. 11 U.S.C. §362 (other prohibited acts omitted as not relevant). The pending action, however, is a lawsuit brought by the Houeys, now debtors, against TD in which TD has not asserted a counterclaim against them. The issue is therefore whether the automatic stay provisions preclude the continuation of this action.

> [T]he automatic stay is inapplicable to suits *by* the bankrupt[.] This appears from the statutory language, which refers to actions against the debtor and to acts to obtain possession of or exercise control over property of the estate, and from the policy behind the statute, which is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors. The fundamental purpose of the bankruptcy, from the creditors' standpoint, is to prevent creditors from trying to steal a march on each other and the automatic stay is essential to accomplishing this purpose. There is, in contrast, no policy of preventing persons whom the bankrupt has sued from protecting their legal rights. True, the bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not, by opposing that suit seeking to take possession of [that asset, it does not violate the automatic stay].

Martin-Trigona v. Champion Federal Sav. and Loan Association, 892 F.2d 575, 577 (7th Cir. 1989) (internal quotations and citations omitted) (emphasis in original).

As noted, TD has not asserted any counterclaims against the debtors; it has, however, moved to dismiss certain claims in the action. "Defenses, as opposed to counterclaims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights[.]" Acands, Inc. v. Travelers Cas. and Sur. Co., 435 F.3d 252, 259 (3rd Cir.), cert. denied 547 U.S. 1159, 126 S.Ct. 2291, 164 L.Ed.2d 833 (2006). "This is true, even if the defendant's successful defense will result in the loss of an allegedly valuable claim asserted by the debtor." In re Palmdale Hills Property, LLC, 654 F.3d 868, 875 (9th Cir. 2011); In re Mosley, 260 B.R. 590, 595 (Bkr.Ga. 2000) (in a chapter 13 case where the debtor is a party plaintiff, that debtor may continue suit). This case is therefore not subject to the automatic stay provisions of 11 U.S.C. §362.

**TD's motion to dismiss.**

As previously noted, the *pro se* Plaintiffs were provided notice of their burden to come forward with a response to TD's motion to dismiss and they were instructed to file response to the Motion to Dismiss on or before

November 23, 2011. [Doc. 18]. Smith was cautioned that she was not allowed to file a response to the motion on behalf of her mother. [Id.]. Smith nonetheless filed a document purporting to respond to the Motion to Dismiss on behalf of her mother. [Doc. 19]. That improperly filed document cannot be considered in ruling on this motion.

On December 1, 2011, the Plaintiffs filed an untimely response to the Motion to Dismiss. [Doc. 29]. The Defendant moved to strike that response as untimely. [Doc. 32]. On December 8, 2011, the Plaintiffs' filed an untimely Amended Response & Opposition to Defendant's Motion to Dismiss in which they claimed that certain pages had been inadvertently omitted from the first filing. [Doc. 35].

Federal Rule of Civil Procedure 6(b) provides that a Court may extend the time within which a pleading must be filed with or without a motion if the Court acts before the original time period expires. Fed.R.Civ.P. 6(b)(1)(A). It may also extend such a time period after its expiration on motion made by a party who is able to establish excusable neglect. Fed.R.Civ.P. 6(b)(1)(B). Here, the Court has not extended the time within which the named Plaintiffs were to respond beyond the deadline established of November 23, 2011. Nor did either of the named Plaintiffs move for an extension thereof based on

excusable neglect. The Court therefore finds that the response filed on December 1, 2011 and the purported amendment thereto filed on December 8, 2011 are untimely and that the failure to timely respond warrants granting the Defendant's motion. Bagwell v. Wake County Public School System, 175 F.3d 1013 (4th Cir. 1999); Shelton v. Atlantic Bingo Supply Co., 2011 WL 4985277 (D.Md. 2011). In so ruling, the Court notes that the actions of the Plaintiffs have appeared to be primarily for the purpose of delay. There have been improper filings, and late filings, and a general disregard for the Court's orders and ordinary procedures in what appears to be an attempt to "muddy the record" in this case as much as possible. For this reason the Court must conclude that the Plaintiffs' December 1, 2011 and December 8, 2011, filings were intentionally tardy.

Nonetheless, if the Court were to consider the untimely response, it would be of not benefit to the Plaintiffs. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) "[A] complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Id.  A plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 570).

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth."  This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief[.]'"

Id. (quoting Twombly, 550 U.S. at 555, 557 and Iqbal, 129 S.Ct. at 1950).

Moreover, even a *pro se* complaint must contain "enough factual allegations to state a claim to relief that is plausible, not merely speculative."

<u>Ray v. Amelia County Sheriff's Office</u>, 302 F. App'x. 209, 211 (4th Cir. 2008);

<u>Campbell v. Commercial Equipment, Inc</u>., 2011 WL 3925068 (E.D.N.C.),

<u>affirmed</u> __ F. App'x. __, 2012 WL 1035448 (4th Cir. 2012).

TD moved to dismiss the following Counts of the Complaint: (1) Count I Willful Concealment; (2) Count II Fraud; (3) Count III RICO;[4] (4) Count V Deceptive Business Practices;[5] (5) Count VI Misapplied Payments; (6) Count VII Breach of Contract; (7) Count VIII Fair Debt Collection Practices; (8) Count XV Promissory Estoppel; (9) Count XVI Negligent Infliction of Emotional Distress; and (10) Count XVII Intentional Infliction of Emotional Distress. Even if the Court were to consider the Plaintiffs' untimely response, they did not address therein TD's reasons for dismissing these claims. Instead, they recite numerous conclusory allegations against TD and argue that through discovery, they will be able to prove their case. Indeed, the response contains allegations concerning claims which are not part of the Complaint.[6] The Court has reviewed the claims which TD seeks to have dismissed and finds that

---

[4]Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1964.

[5]The response contains a generalized citation to "Unfair and Deceptive Business Practices and Acts" but does not make specific arguments or citations to statutes. [Doc. 29 at 8].

[6]For example, reference is made to violations of the Home Ownership Equity Protection Act, the Truth in Lending Act, the Real Estate Settlement Procedures Act, and Fair Lending Statutes, [Doc. 29], none of which are the subject of any pleaded claims.

those claims do not meet the pleading standards sufficient to withstand the motion to dismiss. The Court will therefore grant the motion and dismiss these claims.

The grant of this motion for partial dismissal will leave the following claims in the action: (1) Count IV for breach of the contractual covenants of good faith and fair dealing; (2) Count IX for violations of the North Carolina Consumer Economic Protection Act; (3) Count X for violations of the North Carolina Homeowner and Homebuyer Protection Act; (4) Count XI for violations of the North Carolina Extend Emergency Foreclosure Program; (5) Count XII for violations of the North Carolina Predatory Lending Law; (6) Count XIII for violations of the Uniform Commercial Code; (7) Count XIV for violations of the Fair Credit Reporting Act;[7] and (8) Count XVIII for wrongful foreclosure. As to these claims, the Court will seek direction from the Houeys' Chapter 13 Trustee concerning the debtors' standing to pursue these claims, as opposed to the Trustee pursing them on behalf of the bankruptcy estate. Wilson v. Dollar General Corp., 2012 WL 707068 (W.D.Va. 2012) (noting the Fourth Circuit has yet to address this issue); Brooks v. Prestige Financial Services, Inc., 2011 WL 4914648 (D.Md. 2011); In re Family Dollar FLSA

_____

[7] 15 U.S.C. §1681.

Litigation, 2009 WL 1750908 (W.D.N.C. 2009) (plaintiff prosecuted claim and filed Chapter 13 bankruptcy two years later; held, trustee succeeded to pre-petition cause of action which is property of the estate); In re Gardner, 218 B.R. 338, 342-43 (Bkr.E.D.Pa. 1998) (only Chapter 13 trustee has standing to assert pre-petition cause of action). Should the Trustee determine that only he has standing to pursue such claims, the Court will respectfully request the Trustee to advise whether he will do so. By obtaining such direction from the Trustee, he may "preserve scarce estate assets by prosecuting only those claims which the Trustee deems to be of sufficient merit to justify such treatment." Id.

**The *pro se* Plaintiffs' motion for injunctive relief.**

On December 1, 2011, the Plaintiffs filed the first motion for injunctive relief seeking to stop the foreclosure sale. [Doc. 27].

Injunctive relief is an extraordinary remedy, involving the exercise of far-reaching powers which are to be used sparingly by the courts. The Scotts Company v. United Industries Corporation, 315 F.3d 264 (4th Cir. 2002); In re Foreclosure by McNeely v. Moab Tiara Cherokee Kituwah Nation Chief, 2008 WL 2679975 (W.D.N.C. 2008). In evaluating a request to enjoin a state court foreclosure proceeding, the Court considers the same factors as those applied

to a motion for a preliminary injunction.  Kalos v. Greenwich Ins. Co., 404 F. App'x. 792 (4th Cir.), cert. denied ___ U.S. ___, 132 S.Ct. 119, 181 L.Ed.2d 43 (2011).  Those factors are: (1) the Plaintiff is likely to succeed on the merits; (2) the Plaintiff is likely to suffer irreparable harm if the injunctive relief is denied; (3) the balance of equities tips in the Plaintiff's favor; and(4) injunctive relief would be in the public interest.  Real Truth About Obama v. Federal Election Comm'n, 575 F.3d 342, 347 (4th Cir.), cert. granted, judgment vacated on other grounds ___ U.S. ___, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010);  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).  All four requirements must be satisfied.  Id.

Absent circumstances not presented here, federal courts do not interfere in state court foreclosure proceedings.  MacFadyen v. Smith, 2011 WL 1740583 (D.Md. 2011); Brumby v. Deutsche Bank Nat. Trust Co., 2010 WL 617368 (M.D.N.C. 2010) (declining to issue restraining order regarding state foreclosure action);  Arnold v. Waterfield Mortgage Co., 966 F.Supp. 387, 389 (D.Md. 1996), affirmed 116 F.3d 472 (4th Cir. 1997) (federal courts should refrain from interfering in state court foreclosure proceedings).

In any event, Chapter 45 of the North Carolina General Statutes provides for an appeal process in foreclosure proceedings.  The state court

entered its order allowing TD to proceed with the foreclosure sale on August 10, 2011, and the Plaintiffs did not appeal from that order. N.C. Gen. Stat. §45-21.16. She therefore waived her right to contest any issue adjudicated by the Clerk in the state court foreclosure proceeding. Id.; Vogler v. Countrywide Home Loans, Inc., 2010 WL 3394034 (M.D.N.C. 2010). The doctrine of collateral estoppel therefore precludes relitigation of issues determined in the state court foreclosure. Kalos v. Greenwich Ins. Co., 404 F. App'x. 792 (4th Cir.), cert. denied __ U.S. __, 132 S.Ct. 119, 181 L.Ed.2d 43 (2011). Helen thus cannot show that she is likely to prevail on the merits of issues involved in the state foreclosure proceeding.

Moreover, harm is not considered to be irreparable if it can be compensated by monetary damages during the normal course of litigation. Hughes Network Systems, Inc. v. Interdigital Communications Corporation, 17 F.3d 691, 694 (4th Cir. 1994). The Plaintiffs specifically seek monetary damages in this action. As a result, the balance of equities may not tip in Helen's favor and an injunction would not be in the public interest. The motion is therefore without merit.

**The second motion for emergency injunctive relief.**

On April 25, 2012, a second motion to halt the foreclosure was filed.

15

[Doc. 46].  Although the motion is signed only by Helen, it is phrased as being brought by Smith and Helen. [Id.].  Smith has no standing to bring motions on behalf of her mother and at the time the motion was filed, Smith was not a party to the action.

To the extent the motion was filed by Helen, it is moot in any event. Helen filed a Quitclaim Deed transferring the property to Smith on September 30, 2011. [Doc. 48 at 3].  Smith was, allegedly, thereafter treated in the foreclosure proceeding as an owner.  [Id.].  Helen therefore has no standing to contest the foreclosure.

It must also be noted that the final sale of foreclosure occurred prior to the filing of the motion.  Any relief which may be available to any party is therefore beyond the jurisdiction of this Court.

**The motions for leave to amend, to intervene and for additional time.**

On December 1, 2011, the *pro se* Plaintiffs filed a motion for leave to amend the Complaint to add Smith as a party plaintiff. [Doc. 28].  The motion is predicated on the Quitclaim Deed recorded on September 30, 2011 pursuant to which Smith allegedly became the owner of the property at issue. [Id.].  The Order of Foreclosure was entered on August 10, 2011, prior to the purported transfer of title.  Since that Order was not appealed, it became final.

That order of foreclosure cuts off any interest conveyed subsequent to the date of the deed of trust. See, <u>Tower Development Partners v. Zell</u>, 120 N.C. App. 136, 142, 461 S.E.2d 17, 21 (1995) (except as to conveyances in which the mortgagee joined or agreed). The conveyance to Smith was not only subsequent to the deed of trust, but subsequent to the order adjudicating the right of TD to foreclose on that deed of trust. The property, moreover, was sold on February 28, 2012. Thus Smith's rights, if any, have been adjudicated by the state court.

The claims raised in this action relate to alleged conduct occurring prior to the transfer of title and concerning only the named Plaintiffs and TD. Smith was at no time a party to the contractual relationship between these Plaintiffs and TD or its predecessor. Although leave to amend should be "freely given when justice so requires," it should be denied when the amendment is futile. <u>Hibbits v. Buchanan County School Bd</u>., 433 F. App'x. 203, 205 (4th Cir. 2011). Amendment here would be futile and therefore will not be allowed. <u>US Airline Pilots Ass'n v. Awappa, LLC</u>, 615 F.3d 312, 320 (4th Cir. 2010); <u>Everett v. Prison Health Services</u>, 412 F. App'x. 604 (4th Cir. 2011) (leave to amend to add party denied where futile due to running of statute of limitations).

On December 2, 2011, Smith moved for leave to intervene in the action.

[Doc. 30]. In support of the motion, Smith states that she had many discussions with TD's predecessor prior to the filing of the lawsuit and, thus, has much knowledge about the facts and events at issue. The other ground raised in support of intervention is that she became the owner of the property on September 30, 2011 when her mother quitclaimed it to Smith.

Federal Rule of Civil Procedure 24 addresses both intervention as a matter of right and intervention with permission. Intervention pursuant to either method must be timely sought. Fed.R.Civ.P. 24. In determining whether such a motion is timely, a court should consider (1) the stage of litigation; (2) prejudice that intervention may cause other parties; and (3) the reason for the tardiness. Scardelletti v. Debarr, 265 F.3d 195, 203 (4th Cir.), reversed on other grounds Devlin v. Scardelletti, 536 U.S. 1, 122 S.Ct. 663, 153 L.Ed.2d 578 (2002).

On August 10, 2011, a final Order of Foreclosure was entered in a state foreclosure proceeding against the property purportedly at issue in this action. On August 17, 2011, this action was filed in state court. [Doc. 1]. TD removed the action to this Court on September 8, 2011. [Id.]. On September 30, 2011, Helen quitclaimed the property to Smith. Smith did not move to intervene until December 2, 2011. In support of the motion, Smith did not give any reason

for this delay. She did, however, refer to her involvement in discussions with TD "for months." [Doc. 30]. Smith was thus aware of her interest in this litigation from the outset, and, at the latest, when she received the quitclaim. Scardelletti, 265 F.3d at 203. Even after that transfer, she did not formally move to intervene for more than two months. Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir.), cert. denied 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990) ("The tardiness of the motion is the strongest reason supporting its denial.").

Clearly, this lawsuit has been an unsuccessful attempt to overturn an adjudication of a state court in what is purely a state court matter: foreclosure, and to forestall the foreclosure sale. By the time the deed was transferred to Smith, the Order of Foreclosure had become final. The Plaintiffs and Smith failed to avail themselves of the appropriate procedures in state court to halt the actual sale of the property. Indeed, it is questionable whether Smith had any interest in the property under the circumstances of the transfer. N.C. Gen. Stat. §39-23.5(a).

Intervention by Smith may well be futile but most certainly would be prejudicial to TD at this juncture of the litigation. Allowing Smith to intervene would mean that the ruling on TD's Motion to Dismiss would necessarily be

delayed in order to provide her with an opportunity to respond. Because the claims that are being dismissed have no bearing on Smith, any such response would be futile, merely leading to further complication. Gould, 883 F.2d at 286-87. Both the stage of litigation and the potential for prejudice are factors that weight against allowing intervention.

Although the untimeliness of the motion is alone sufficient for its denial, Smith has also failed to show that she is entitled to intervention as a matter of right or by permission. In order to obtain intervention as a matter of right, Smith must show that she has an interest which will be impaired and which cannot be represented absent intervention. Gould, 883 F.2d at 284. "A movant seeking to intervene as a matter of right must demonstrate that [she] has a significantly protectable interest in the subject matter of the action." Defenders of Wildlife v. North Carolina Dept. of Transportation, ___ F.R.D. _ , 2012 WL 214402 **3 (E.D.N.C. 2012). None of the claims raised in this litigation bear on an interest owned by Smith. All of the claims relate to the contractual relationships between the Houeys and TD. Although Smith may have been a witness to some of the occurrences relevant to the action, she does not have an interest, economic or otherwise, in any cause of action

asserted in the Complaint.[8] Id. at \*\*4.  In other words, she does not stand "to gain or lose by the direct legal operation" of this court's final judgment on the Complaint.  Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991).  Thus, denial of intervention will not impair her interest.  Defenders, 2012 WL 214402.

Nor would Smith be entitled to permissive intervention since she does not have a claim which shares with this action a common question of law or fact.  Fed.R.Civ.P. 24(b)(1)(B).  As stated above, Smith does not have an interest in the claims asserted in this lawsuit.  Indeed, Smith does not have standing to assert those claims, making any intervention futile.  L.S. ex rel. Ron S. v. Cansler, 2011 WL 6030075 (E.D.N.C. 2011).

Moreover, "[u]ndue delay or prejudice to the rights of the original parties has been the focal point of most decisions dealing with permissive intervention."  Stuart v. Huff, 2011 WL 6740400 \*\*3 (M.D.N.C. 2011) (quoting Wooten v. Moore, 42 F.R.D. 236, 240 (E.D.N.C. 1967)).  "While the intervention of additional parties does not constitute undue delay in all cases, here it seems highly likely that intervention would result in undue delay in adjudication of the merits, without a corresponding benefit to existing litigants,

_____

[8]This lack of interest also extends to the claim for wrongful foreclosure since, by the time Helen transferred the deed to Smith, the Order of Foreclosure had become final.  Thus, the elements of any such claim relate to occurrences prior to that point in time when Smith arguably obtained an interest in the property.

the courts, or the process." Id. In fact, in this matter the multiplicity of filings by the Plaintiffs and Smith have served to unnecessarily complicate, extend and delay this case. It appears that such delay may well be Plaintiffs' and Smith's intent. For these reasons the motions to amend and to intervene will be denied.

In view of the rulings contained herein, Smith's motion for an extension of time within which to consult an attorney is moot.

## ORDER

**IT IS, THEREFORE, ORDERED** as follows:

1.　The automatic stay provisions of 11 U.S.C. §362 do not apply to this action. The Clerk of Court is instructed to serve a copy of this Order on the Plaintiffs' Chapter 13 Trustee, Steven Tate, who is respectfully requested to notify the Court on or before thirty (30) days from service of this Order of his position as to whether the debtors have standing to pursue this action on behalf of the bankruptcy estate. In the event that the Trustee determines that only he has such standing, he is respectfully requested to advise the Court in the same filing whether he will pursue any claims asserted in this action.

2.　The Motion to Dismiss of TD Bank, N.A. (TD), successor by merger to

and formerly known as Carolina First Bank [Doc. 7] is hereby **GRANTED** and the following claims are hereby **DISMISSED** with prejudice: Count I Willful Concealment; Count II Fraud; Count III RICO; Count V Deceptive Business Practices; Count VI Misapplied Payments; Count VII Breach of Contract; Count VIII Fair Debt Collection Practices; Count XV Promissory Estoppel; Count XVI Negligent Infliction of Emotional Distress; and Count XVII Intentional Infliction of Emotional Distress.

3.      The Motion for Emergency Injunctive Relief [Doc. 27] of the *pro se* Plaintiffs is hereby **DENIED**.

4.      The Motion for Emergency Injunctive Relief of Plaintiff Helen Houey and non-party Smith [Doc. 46] is hereby **DENIED**.

5.      The Motion for Leave to File Amended Complaint to Add Additional Party Plaintiff [Doc. 28] of the *pro se* Plaintiffs is hereby **DENIED**.

6.      The Motion to Intervene [Doc. 30] of Smith is hereby **DENIED**.

7.      The Motion for Extension of Time to Consult/Retain Counsel of Smith [Doc. 31] is hereby **DENIED** as moot.

8.    The Motion to Strike Plaintiffs' Response & Opposition to Motion to

Dismiss of TD [Doc. 32] is hereby **DENIED** as moot.

Signed: August 10, 2012

Martin Reidinger
United States District Judge